UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MALIK WALLACE                                                                                   PLAINTIFF

V.                                 No. 4:20-CV-00855-DPM-JTR

BRIGGS, Major,
Pulaski County Jail, *et al*.                                                                DEFENDANTS

### RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to Chief United States District Judge D. P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Marshall may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

Plaintiff Malik Wallace ("Wallace"), a pretrial detainee in the Pulaski County Regional Detention Facility ("PCRDF"), and another PCRDF inmate—Dominic Session ("Session")—jointly filed a *pro se* § 1983 Complaint and Amended Complaint alleging Defendants violated their constitutional rights. *Docs. 1 & 3*.

Pursuant to the Court's long-standing practice, the Clerk severed Wallace's and Session's claims into two separate lawsuits.[1] *Doc. 2 at 1*. After screening,[2] Wallace was allowed to proceed with his claims against former PCRDF Major Matthew Briggs ("Briggs"), PCRDF Captain Kelly Paxson ("Paxson"), and former PCRDF Captain Tracy Hobbs ("Hobbs"). *Docs. 8 & 9*.

Defendants have now filed a Motion for Summary Judgment (*Doc. 37*) arguing they are entitled to judgment, as a matter of law, on the claims Wallace has asserted against them.

## II. Discussion

Wallace alleges that, while eating lunch, on May 24, 2020, he chipped his tooth, cut his throat, and "almost choked," when he bit a metal key hidden in the food on his lunch tray. *Doc. 3 at 4*. He alleges that, just eleven days prior, on May 13, 2020, inmate Session had also chipped his tooth and cut his throat after similarly biting down and chocking on a key in his food. *Doc. 1 at 4*.

Wallace alleges that an unknown PCRDF officer intentionally placed the key in his food, in an attempt to hurt him or another inmates, which is a breach of security. *Doc. 1 at 6*. Wallace alleges that Defendants Briggs, Paxton, and Hobbs (collectively "Defendants") were responsible for security at the PCRDF, but

---

[1] *See Session v. Briggs, et al.*, Case No. 4:20-cv-00854-DPM (E.D. Ark.).
[2] *See* 28 U.S.C. § 1915A.

contends that they refused to address the issue, and thus, he asserts a corrective inaction claim against them. He also alleges that Defendants refused to respond to his grievances about the incident. *Id*.

Wallace has sued Defendants in their official and individual capacities, and he seeks $1 million for the damage to his tooth and throat, and his mental anguish. *Doc. 1 at 4-7; Doc. 3 at 2-6; Doc. 5*.

On March 9, 2022, Defendants filed their Motion for Summary Judgment, Brief in Support, and Statement of Undisputed Facts.[3] *Docs. 37-39*. On April 12, 2022, I entered an Order informing Wallace that he had a right to file a Response and that, in doing so, he "must separately file a 'short and concise statement of material facts as to which he contends a genuine dispute exists to be tried,'" as required by Local Rule 56.1. *See Doc. 40 at 1*. Finally, my Order allowed Wallace until April 26, 2022 "to file a Response to Defendants' Motion for Summary Judgment and a separate Statement of Disputed Facts … [and] advised [Wallace] that [his] failure to timely and properly file a Response and Statement of Disputed Facts w[ould] result in: (a) all of the facts in Defendants' Statement of Undisputed Facts being deemed undisputed…; and (b) the possible dismissal of this action, without prejudice, pursuant to Local Rule 5.5(c)(2)." *Id. at 2*.

---

[3] Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).

3

Wallace has not filed a Response to Defendants' Motion for Summary Judgment or attempted to controvert any of the facts set forth in Defendants' Statement of Undisputed Facts, and the time to do so has long since passed. Accordingly, all facts alleged in Defendants' Statement of Undisputed Facts should now be deemed undisputed pursuant to Rule 56(e)(2) of the Federal Rules of Civil Procedure.

### 1. Wallace's Corrective Inaction Claims Against Defendants

In *Boyd v. Knox*, 47 F.3d 966 (8th Cir. 1995), the Eighth Circuit explained the narrow contours of "supervisory liability" and the essential elements required to find a supervisor liable for a constitutional violation committed by another employee:

> In the section 1983 context, supervisor liability is limited. A supervisor cannot be held liable, on a theory of respondeat superior, for an employee's unconstitutional actions. *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994). Rather, a supervisor incurs liability for an Eighth Amendment violation when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation. *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir.1993). "'**The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see**.'" *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir.1994) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988)).

*Boyd*, 47 F.3d at 968 (emphasis added; footnote omitted).

Here, Briggs, Paxson, and Hobbs were all supervisory officers. According to Wallace, they failed to address a so-called "serious breach of security" that supposedly led to Wallace biting down on a key hidden in his food. Wallace does

4

not allege that the Defendants had *any* personal involvement in hiding the key in his food tray or that they had *any* knowledge that someone else had allegedly hidden the key in his food. Accordingly, to establish "supervisory liability," against these Defendants, Wallace must come forward with facts demonstrating that they "[knew] about the conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what [they] might see." *Id*.

In their sworn Affidavits, Briggs, Paxson, and Hobbs each declared that they "did not participate in the preparation or distribution of inmate food trays," and specifically stated that, "[o]n May 24, 2020, [they] did not prepare, distribute, or otherwise have contact with [Wallace's] lunch tray." *Doc. 39-7 at ¶¶ 2-3; Doc. 39-8 at ¶¶ 2-3; Doc. 39-9 at ¶¶ 2-3*. Further, Defendants each declared that "[t]he May 24, 2020 incident [involving Wallace finding a key in his food] was not reported to [them]." *Doc. 39-7 at ¶ 4; Doc. 39-8 at ¶ 4; Doc. 39-9 at ¶ 5*. Additionally, Paxson declared that he "had no knowledge of the May 24, 2020 incident until the filing of the instant lawsuit." *Doc. 39-7 at ¶5*. Finally, Briggs declared that, during the relevant time, "[f]rom March 2020 – June 2020, [he] was out of the [PCRDF] on leave pursuant to the Family and Medical Leave Act." *Doc. 39-9 at ¶ 3*. Wallace did not controvert any of the facts stated in the Affidavits of Briggs, Paxson, and Hobbs, all of which should now be deemed to be undisputed. *See* Fed. R. Civ. P. 56(e); Local Rule 56.1(c).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party *only if* there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)) (emphasis added). "When the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp,*, 475 U.S. 574, 586–87 (1986)).

Here, the record is devoid of *any* facts suggesting that Briggs, Paxson, or Hobbs knew anything about the May 24, 2020 incident *until after Wallace filed this lawsuit*. Likewise, Wallace has proffered no facts to controvert the sworn statements of Briggs, Paxson, and Hobbs that they did not facilitate, approve, condone, or turn a blind eye to the incident.

Accordingly, Defendants' Motion for Summary Judgment should be granted, as to Wallace's corrective inaction claim against Defendants Briggs, Paxson, and Hobbs. *See Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790–91 (8th Cir. 2009) (affirming summary judgment on Plaintiff's § 1983 claim because he failed to carry his burden of proffering sufficient evidence to permit a finding in his favor where his alleged evidence amounted to "[m]ere allegations, unsupported by specific facts or evidence beyond [his] own conclusions.") (citations omitted).

6

### 2. Wallace's Claim that His Grievances Were Not Properly Processed

Wallace asserts that his grievances about the May 24 incident were not properly responded to by unnamed parties. *Doc. 3 at 5*. However, the Eighth Circuit has made it clear that, because prisoners do not have a constitutional right to a prison grievance procedure, a prison official's failure to properly process a grievance, standing alone, is not actionable under § 1983. *Walker v. Bertsch,* 745 F. App'x 664, 664 (8th Cir. 2018) (holding that prisoner had no viable due process claim regarding the prison's grievance system, as the grievance system does not give rise to a liberty interest requiring due process protection); *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (holding that allegations regarding actions of prison officials in handling prisoner's grievances and regulating access to his attorney were insufficient to state a "substantive constitutional claim"); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that inmates have no "liberty interest" in the processing of their grievances, such as would support § 1983 claim for prison official's failure to pick up his completed grievance forms).

Accordingly, Defendants' Motion for Summary Judgment should also be granted on Wallace's claim that Briggs, Paxson, and Hobbs failed to properly process and respond to his grievances.

### 3. Wallace's Official Capacity Claims

Finally, to the extent Wallace is suing Defendants in their official capacity, such claims must be construed as claims against their employer, Pulaski County. *Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018). Pulaski County cannot be held vicariously liable, in a § 1983 action, for the allegedly unconstitutional acts of its employees. *Id*. at 800-01 (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694-95 (1978)). Instead, it can only be held liable if its policies, customs, and practices caused Wallace's injury. *Brewington*, 902 F.3d at 801-02; *Corwin v. City of Independence, Missouri*, 829 F.3d 695, 699-700 (8th Cir. 2016).

Wallace has not alleged that a Pulaski County policy, practice, or custom caused his injury. Additionally, Defendants' Statement of Undisputed Facts, which should now be deemed to be undisputed, provides that it is the PCRDF's policy to "ensure the highest possible level of safety," and "to ensure that all food preparation and consumption are conducted in a clean, safe environment." *Doc. 39 at 14*.

Accordingly, Defendants are entitled to summary judgment on all of Wallace's official capacity claims against the Defendants.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendants' Motion for Summary Judgment (*Doc. 37*) be GRANTED, and this action be DISMISSED, WITH PREJUDICE.

DATED this 2nd day of December, 2022.

                                                                        */s/ J. Thomas Ray*
                                        UNITED STATES MAGISTRATE JUDGE